**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SARAH E. CHALFONT,<br><br>Plaintiff,<br><br>v.<br><br>LELAND DUDEK,<br><br>Defendant. | ) | 2:24-cv-968 |

**ORDER**

Administrative Law Judge Joanna Papazekos found Plaintiff Sarah E. Chalfont no longer disabled as of July 2018. Ms. Chalfont appeals that order. On substantial-evidence review, *see Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999), the Court affirms.

This is a continuing disability review (CDR) case.[1] So ALJ Papazekos evaluated Ms. Chalfont's medical improvement under the seven-step process.[2]

[1] The Commissioner found Ms. Chalfont disabled in July 2011. ECF 8-2 at 13. She was found to be still disabled as of April 2015 after the first CDR. *Id.* Then in July 2018, the Commissioner found that she was no longer disabled. *Id.* Ms. Chalfont filed a written request for a hearing before an ALJ. *Id.* Two hearings were held before an ALJ in 2020, and the ALJ found that Ms. Chalfont was no longer disabled as of July 1, 2018. *Id.* The Commissioner agreed to voluntarily remand for further consideration; on remand in 2022, the ALJ again found that Ms. Chalfont was not disabled in 2018 and had not become disabled after that date through March 2022. ECF 8-10 at 12–30; ECF 13 at 2, 10. Ms. Chalfont now appeals the CDR determination.

[2] The seven-step process entails:

> At Step One, the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").
>
> At Step Two, the ALJ must determine whether medical improvement has occurred. See 20 C.F.R. § 416.994(b)(5)(ii). "Medical improvement

is any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled." 20 C.F.R. § 416.944(a)(1)(i). Moreover, a "determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Id.* If medical improvement has occurred, the analysis proceeds to Step Three; if it has not, the analysis proceeds to Step Four. *See* 20 C.F.R. § 416.994(b)(5)(ii).

At Step Three, the ALJ must determine whether medical improvement is related to the ability to work, i.e., whether there has been an increase in the claimant's residual functional capacity ("RFC") based on impairments present at the time of the most recent favorable medical determination ("comparison point decision" or "CPD"). *See* 20 C.F.R. § 416.994(b)(5)(iii). If so, the analysis proceeds to Step Five; if not, the analysis proceeds to Step Four.

At Step Four, the ALJ must consider whether an exception to medical improvement, from one of two groups of exceptions, applies. *See* 20 C.F.R. §§ 416.994(b)(5)(iv), 416.994(b)(3), 416.994(b)(4). If an exception from the first group applies, the analysis proceeds to Step 5. If an exception from the second group applies, the claimant's disability ends. If no exception from either group applies, the claimant's disability continues. *See* 20 C.F.R. § 416.994(b)(5)(iv).

At Step Five, the ALJ must determine whether all the claimant's current impairments in combination are severe. *See* 20 C.F.R. § 416.994(b)(5)(v). If all the claimant's current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled; if they do, the ALJ's analysis proceeds to Step Six.

At Step Six, the ALJ must assess the claimant's RFC based on the current impairments and determine if the claimant can do past relevant work. *See* 20 C.F.R. § 416.994(b)(5)(vi). If the claimant has the capacity to perform past relevant work, disability has ended; if not, the ALJ's analysis proceeds to Step Seven.

At Step Seven, the last step, the ALJ must determine whether other work exists that the claimant can perform, taking into consideration the claimant's age, education, past work experience, and RFC. *See* 20

Ms. Chalfont raises seven main issues in her brief and the Court addresses each, in turn.[3]

**Issue 1**: "The ALJ erred by not providing legally sufficient reasons for discounting Plaintiff's statements and testimony concerning her poor judgment and poor insight from her mental impairments as determined by Dr. Geith Shahoud, M.D., treating psychiatrist, in derogation of 20 C.F.R. § 416.929(c)." ECF 11 at 4.

**Issue 2**: "The ALJ erred by not assigning any weight and failing to consider the treating physician rule factors in 20 C.F.R. § 416.927(c)(1)-(6) for Dr. Geith Shahoud, M.D., treating psychiatrist, and Tina Marie Matthews-Hayes, CRNP, treating health care provider." ECF 11 at 4.

The Court analyzes Issues 1 and 2 together, as they go to the supportability and consistency of Dr. Shahoud's and CRNP Matthews-Hayes's clinical findings and the ALJ's RFC finding.

The ALJ found that the medical evidence showed that Ms. Chalfont can perform work consistent with the RFC "with routine and conservative medical

---

> C.F.R. § 416.994(b)(5)(vii). If the claimant can perform other work, he or she is not disabled; if the claimant cannot perform other work, his or her disability continues. *See id.* At this stage, a limited burden of going forward with the evidence shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work that exists in the national economy, given the above-mentioned factors.

*Bertsch v. Berryhill*, No. CV 17-286-E, 2019 WL 1368567, at *2–3 (W.D. Pa. Mar. 25, 2019) (Bloch, J.) (cleaned up).

[3] Ms. Chalfont's eighth issue is that the "ALJ's decision is not based on substantial evidence." ECF 11 at 5. Like with other social security appeal cases, the Court reviews the ALJ's CDR decision under the substantial-evidence standard of review. *See Butler v. Kijakazi*, 587 F. Supp. 3d 223, 225 (E.D. Pa. 2022). So this argument is taken under consideration throughout the Court's analysis.

treatment." ECF 8-2 at 28–29; ECF 8-12 at 42; ECF 8-10. In so finding, she found that the Western PA Behavioral Health Resources treatment records constituted clinical findings, rather than medical opinion evidence, and showed that Ms. Chalfont's condition had improved. *Id.*

The Court holds that these findings are supported by substantial evidence in the record, and that the ALJ correctly considered the Western PA Behavioral Health Resources evidence as clinical findings, rather than medical opinion evidence. In those records, Dr. Shahoud and CRNP Matthews-Hayes reported that Ms. Chalfont took her medications consistently, displayed normal speech, appeared relaxed, and showed no abnormalities in her psychomotor behavior. *See* ECF 8-2 at 24, ECF 8-8 at 8–28. The Court agrees, and also finds that these reports are consistent with the record as a whole. ECF 8-2 at 24 ("[C]linical findings were improved in that her mood was described as happy, her affect was congruent, she made good eye contact, had normal speech, and her insight and judgment were described as fair."); ECF 8-10. The Court finds that the ALJ did not commit error as to her assessment of the clinical findings.

**Issue 3:** "The ALJ erred by evaluating medical opinion evidence according to 20 C.F.R. § 416.920(c), which is only to be considered for cases filed after March 27, 2017. (R.778)." ECF 11 at 4.

This argument misstates the SSA's rules and guidance. The SSA explicitly states in its Program Operations Manual System: "***Use the current rules if the CDR is on or after March 27, 2017***." Social Security Administration, Program Operations Manual System (POMS), DI 24503.050 (effective Apr. 3, 2017 to present) (emphasis added). The CDR at issue commenced in 2018, so the ALJ correctly evaluated the medical opinion evidence under 20 C.F.R. § 416.920(c).

But even if Ms. Chalfont were right and the ALJ were required to apply the prior rules, the Court can discern no harmful error here that would warrant remand.

*See, e.g.*, *Salles v. Commissioner of Social Security*, 228 Fed. App'x. 140, 145 n.2 (3rd Cir.2007) (finding ALJ's determination harmless error because ALJ found in claimant's favor at step two); *Kreuzberger v. Astrue*, 2008 WL 2370293 at *8 (W.D. Pa. 2008) (Ambrose, J.) (finding that even if the ALJ had erroneously concluded that an impairment was not severe, error was harmless because the ALJ found in claimant's favor at step two and proceeded with the sequential analysis).

That is, Ms. Chalfont argues that the ALJ failed to give "controlling weight" to treating physician Dr. Mary Zakutsky's opinion evidence and Dr. Catalano's opinion evidence, which she alleges is the standard under the prior rules. ECF 11 at 25–29. The Court finds that even if the ALJ had applied that standard, the ALJ would have reached the same determination as to Ms. Chalfont's RFC.

Regarding Dr. Zakutsky's opinion evidence, Ms. Chalfont argues that the ALJ failed to give weight to Dr. Zakutsky's note that Ms. Chalfont needed a therapy dog. *Id.* As the Court explains below, the service dog issue is an ADA accommodation, and does not necessarily have bearing on the RFC determination. The ALJ properly considered and weighed this medical opinion evidence.

Regarding Dr. Catalano's opinion evidence, the ALJ did not discount his medical opinion evidence. The ALJ did not disregard Ms. Chalfont's migraines; rather, she found that the migraines were non-severe and the "evidence of record does not indicate any work related limitations attributable to headaches and her condition appears to be responding to treatment both in terms of decreased frequency and lower intensity of her headaches." ECF 8-2 at 21; ECF 8-10 at 20. The Court finds that even if the ALJ gave controlling weight to Dr. Catalano's opinion, she would have drawn the same conclusion.

The Court finds that the ALJ's use of prior rules would not have led to a different outcome because there was substantial evidence in the record to support her findings.

**Issue 4**: "The ALJ erred by not submitting to the VE in her RFC hypothetical questions at step 5, Plaintiff's limitations from her non-severe impairments of migraine headaches and asthma in derogation of SSR 96-8P." ECF 11 at 4.

**Issue 5**: "The ALJ erred by not submitting to the VE in her RFC hypothetical questions at step 5, Plaintiff's poor judgment and poor insight in derogation of SSR 96-8P, which requires using judgment in making work-related decisions." ECF 11 at 4.

**Issue 6**: "The ALJ erred by not submitting to the VE Plaintiff's need for a service animal and failing to explain why the service animal was left out of the RFC determination." ECF 11 at 4.

The Court addresses Issues 4, 5, and 6, together, as they go to what the ALJ is required to submit to a VE, which is related to what the ALJ is required to include in the RFC. The ALJ only has to include in the RFC all impairments that are "*clearly established limitations*." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). And only then does the ALJ have to include the limitation in the hypotheticals submitted to the VE. *Id.*

The ALJ correctly evaluated Ms. Chalfont's asthma and migraine headaches when determining Ms. Chalfont's RFC. She correctly found that they are not clearly established limitations. Based on that finding, the ALJ was not required to submit these as hypothetical questions to the VE.[4] The Court finds no error with the ALJ's RFC determination.

[4] As to headaches, the ALJ explained: "the evidence of record d[id] not indicate any work related limitations attributable to headaches and her condition appear[ed] to be responding to treatment." ECF 8-2 at 21. As to asthma, the ALJ explained that she "carefully considered [Plaintiff's] 'non-severe' impairments [*i.e.*, asthma] in assessing the residual functional capacity and f[ound] no specific functional vocational limitations beyond those outlined in the [RFC]." *Id.* at 6.

Regarding the service dog, the ALJ was not required to include this in the RFC and therefore did not have to submit this to the VE. The need for a service dog is an ADA accommodation, which is distinct from SSA disability determinations. *See Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) (recognizing that SSA findings of disability are distinct from ADA "reasonable accommodations") ("[W]hen the SSA determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI.").

So if the ALJ finds that the need for a service dog doesn't create a limitation warranting inclusion in the RFC, then the ALJ doesn't have to submit that information to the VE. The record evidence shows that Ms. Chalfont "indicated that she [was] in the process of looking for a service dog," and that her primary care physician wrote a letter stating, "it has been advised that [Ms. Chalfont] have [a] therapy dog." ECF 8-2 at 16, 25 ("However, the evidence of record from Kreinbrook dated January 23, 2020 demonstrates that the service animal was the claimant's idea. Mental status findings from this visit are also generally within normal limits and the record indicates there were no changes made in her medications."); ECF 8-10.

In the end, while reasonable minds can differ, the ALJ's RFC finding was supported by substantial evidence. And the ALJ wasn't required to submit any impairments to the VE that were not clearly established limitations warranting inclusion in the RFC.

**<u>Issue 7</u>**: "The ALJ erred by failing to consider and to disregard Dr. Louis Catalano, M.D., treating neurologist's opinions in diagnosing and treating Plaintiff with intractable common transformed migraine without aura and asthma in derogation of 20 C.F.R. § 416.929(c)." ECF 11 at 4.

The ALJ correctly weighed Dr. Catalono's findings as to Ms. Chalfont's migraines and asthma. The ALJ referenced extensive evidence in the record in finding there were no workplace limitations due to migraines and asthma. For example, the ALJ correctly found that Ms. Chalfont's neurologic exams were normal, she had been prescribed medication for her headaches (and could remember to take her medications without reminders), and there was no evidence she followed up with Dr. Catalono for further evaluation or treatment. *See* ECF 8-15 at 44; ECF 8-2 at 15, 20 ("[T]he undersigned finds that the claimant's asthma, acute sinusitis, and migraine headaches have not caused and are not expected to cause more than a minimal limitation on the claimant's ability to perform basic work activities for at least twelve months and are non-severe."). *See also DeCarlo v. Barnhart*, 116 F. App'x 387, 390 (3d Cir. 2004) ("Since DeCarlo's subjective complaints of disabling headaches are not supported by objective medical evidence in the record, the ALJ was not required to include them in the hypothetical question he posed to the vocational expert."); ECF 8-10.

The ALJ's findings as to Ms. Chalfont's RFC was supported by substantial evidence, and she correctly weighed the evidence provided by Ms. Chalfont's visits with Dr. Catalono. The Court finds no error in the ALJ's findings.

******

For these reasons, the decision of the ALJ is **AFFIRMED**. The Clerk of this Court shall mark this case as **CLOSED**.

DATED this 20th day of August, 2026.

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge